**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PATRICK J. DUCRE** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-2506** |
| **N. BURL CAIN, WARDEN** | **SECTION "B"(4)** |
| **LOUISIANA STATE PENITENTIARY** | |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

I.     **Factual and Procedural Background**

The  petitioner, Patrick J. Ducre ("Ducre"), is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On May 10, 2007, Ducre was charged by Bill of Information in St. Tammany Parish with one count of possession with intent to distribute

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

marijuana, one count of second offense possession of marijuana, and one count of injuring a police dog.[3]  Ducre entered a plea of not guilty to the charges at his arraignment on May 30, 2007.[4]

The record reflects that, at about 11:30 p.m. on April 17, 2007, Detective Ben Godwin and Deputy Brian Stienert of the St. Tammany Parish Sheriff's Office conducted a routine traffic stop of a vehicle driven by Ducre after he failed to stop at a stop sign.[5]  At the time of the stop, Deputy Stienert's unit was directly behind Ducre's car, and Detective Godwin's unit was behind Deputy Stienert's unit as back-up.  At the time of the stop, Ducre had a pit bull and two passengers in his car, his girlfriend, Stephanie Webb, who was seated in the front passenger seat, and Roger Brock, who was seated behind her in the back seat.

Ducre got out of the car and walked toward Deputy Stienert with his hands in the air, asking why he was stopped.  Ducre gave the deputy his Louisiana identification card.  While the deputy spoke with Ducre, Detective Godwin approached the open driver's side window and leaned his head in to speak with the passengers.  He did not observe any weapons in the passengers' hands, and he used his flashlight to illuminate the interior floorboard.  Detective Godwin saw a portion of a plastic storage bag containing six smaller plastic bags of suspected marijuana protruding from underneath the driver's seat.  Detective Godwin pulled the bag out from underneath the seat and instructed Deputy Stienert to restrain Ducre on the ground.  Ducre ignored the officer's commands and took flight into a wooded area.  Deputy Stienert gave chase, but Ducre escaped.  The officers placed the two passengers under arrest, and prepared an affidavit for a warrant for Ducre's arrest.  The

---

[3]St. Rec. Vol. 1 of 8, Bill of Information, 5/10/07.

[4]St. Rec. Vol. 3 of 6, Minute Entry, 6/18/09.

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Ducre*, No. 2008-KA-1644, 2008 WL 5377668, at *1-*2 (La. App. 1st Cir. Dec. 23, 2008); St. Rec. Vol. 4 of 8, 1st Cir. Opinion, 2008-KA-1644, 12/23/08.

passengers told the officers that the pit bull belonged to Ducre. The dog was taken to an animal control shelter where the police gave the staff instructions to call if Ducre tried to retrieve the dog.

On or about April 19, 2007, personnel at the animal control shelter contacted police when Ducre arrived to retrieve his dog. When the officers arrived, Ducre fled into the woods. Assisted by police dogs, the St. Tammany Parish Sheriff's Deputies ultimately caught and arrested Ducre. Before he was handcuffed, Ducre kicked one of the police dogs several times, and the dog bit him.

Ducre was transported from the scene to the St. Tammany Parish Hospital for treatment of the bite. Later, before transporting Ducre to jail from the hospital, Deputy Shane Bennett conducted a pat-down search and seized a small packet of suspected marijuana from Ducre's pants' pocket.

On April 22, 2008, the Trial Court denied Ducre's motion to suppress the evidence and granted the State's motion to sever the third count for injury to the police dog.[6] Ducre thereafter was tried before a jury on counts one and two.[7] As to count one, the jury found him guilty of the responsive verdict of attempted possession with intent to distribute marijuana, and on count two, guilty as charged of second offense possession of marijuana.[8]

On May 12, 2008, the Trial Court denied Ducre's motions for post-verdict judgment of acquittal and for a new trial.[9] The Trial Court sentenced Ducre to serve consecutive sentences at

---

[6]St. Rec. Vol. 1 of 8, Trial Minutes, 4/22/08; Trial Transcript, 4/22/08; St. Rec. Vol. 2 of 8, Trial Transcript (continued), 4/22/08. Later, on June 15, 2009, the Trial Court granted Ducre's *pro se* motion to have the third count, injury to the police dog, quashed for failure to timely prosecute. St. Rec. Vol. 4 of 8, Trial Court Order, 6/15/09; Motion to Quash, 5/27/09.

[7]St. Rec. Vol. 1 of 8, Trial Minutes, 4/22/08; Trial Transcript, 4/22/08; St. Rec. Vol. 2 of 8, Trial Transcript (continued), 4/22/08; St. Rec. Vol. 3 of 8, Trial Transcript (continued), 4/22/08.

[8]St. Rec. Vol. 1 of 8, Trial Minutes, 4/22/08; Jury Verdict, 4/22/08; Trial Transcript, 4/22/08; St. Rec. Vol. 2 of 8, Trial Transcript (continued), 4/22/08; St. Rec. Vol. 3 of 8, Trial Transcript (continued), 4/22/08.

[9]St. Rec. Vol. 1 of 8, Sentencing Minutes, 5/12/08; Motion for Post-Verdict Judgment of Acquittal, 5/12/08; Motion for a New Trial, 5/12/08.

hard labor of 15 years in prison on count one, and five years in prison on count two.[10]  The State also filed a multiple offender bill setting forth nine prior felony offenses committed by Ducre.[11]

At a hearing held June 3, 3008, the Trial Court adjudicated Ducre to be a third felony offender as to count one, vacated the prior sentence on that count, and resentenced Ducre to serve life in prison at hard labor without benefit of parole, probation, or suspension of sentence.[12]  The Court also resentenced Ducre on count two as a second offense and sentenced him to serve life in prison at hard labor on that count.[13]

On direct appeal, Ducre's appointed counsel raised five grounds for relief: (1) the Trial Court erred in denying the motion to suppress the evidence seized during the traffic stop; (2) the Trial Court erred in denying the motion to suppress evidence seized at the time of arrest; (3) the Trial Court erred in failing to admonish the jury after the prosecutor's improper opening comments; (4) the evidence was insufficient to support the verdict for attempted possession of marijuana with intent to distribute; and (5) the Trial Court erred in imposing the excessive sentences.

On December 23, 2008, the Louisiana First Circuit affirmed Ducre's convictions, habitual offender adjudication and the sentence for count one (attempted possession with intent to distribute) finding no merit in the claims and finding that the excessive sentence claims to be procedurally

---

[10]St. Rec. Vol. 1 of 8, Sentencing Minutes, 5/12/08; St. Rec. Vol. 3 of 8, Sentencing Transcript, 5/12/08.

[11]St. Rec. Vol. 1 of 8, Sentencing Minute, 5/12/08; Multiple Bill, 4/23/08.

[12]St. Rec. Vol. 1 of 8, Multiple Bill Hearing Minutes, 6/3/08; St. Rec. Vol. 3 of 8, Multiple Bill Hearing Transcript, 6/3/08.

[13]St. Rec. Vol. 1 of 8, Multiple Bill Hearing Minutes, 6/3/08; St. Rec. Vol. 3 of 8, Multiple Bill Hearing Transcript, 6/3/08.

4

barred from review.[14]  The Court also found Ducre's excessive sentence claim moot as it related to count two (second offense possession of marijuana), because the life sentence on that count exceeded the statutory maximum.  The Court nevertheless vacated that sentence and remanded the matter to the Trial Court for resentencing on count two only.

On January 22, 2009, Ducre submitted a writ application to the Louisiana Supreme Court, which the Court denied without stated reasons on December 18, 2009.[15]  Ducre's conviction for attempted possession with intent to distribute marijuana and the life sentence for that count became final 90 days later, on March 18, 2010, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

Shortly thereafter, on May 27, 2010, the Trial Court resentenced Ducre on count two to serve five years in prison at hard labor.[16]  The Trial Court also denied Ducre's motion to reconsider.[17]

On appeal, Ducre's counsel alleged that the sentence was illegal based on statutory construction.  The Louisiana First Circuit affirmed the sentence on March 25, 2011, finding no merit to the claim.[18]  Ducre's conviction and sentence for this count became final 30 days later, on

---

[14]*State v. Ducre*, 2008 WL 5377668, at *1; St. Rec. Vol. 4 of 8, 1st Cir. Opinion, 2008-KA-1644, 12/23/08.

[15]*State ex rel. Ducre v. State*, 23 So.3d 939 (La. 2009); St. Rec. Vol. 6 of 8, La. S. Ct. Order, 2009-KH-0355, 12/18/09; La. S. Ct. Writ Application, 09-KH-355, 2/16/09 (postmarked 1/26/09, dated 1/22/09).  On May 4, 2009, the Trial Court granted Ducre's motion to run his sentences concurrently with his sentence after parole revocation in a different case.  St. Rec. Vol. 4 of 8, Trial Court Order, 5/4/09; Motion to Run Sentences Concurrently, 4/30/09.

[16]St. Rec. Vol. 4 of 8, Re-Sentencing Minutes, 5/27/10; Re-Sentencing Transcript, 5/27/10.

[17]St. Rec. Vol. 4 of 8, Trial Court Order, 6/21/10; Motion for Reconsideration of Sentence, 6/15/10.

[18]*State v. Ducre*, 58 So.3d 1152 (La. App. 1st Cir. 2011) (Table); *State v. Ducre*, No. 2010-KA-1648, 2011 WL 1107169, at *1 (La. App. 1st Cir. Mar. 25, 2011); St. Rec. Vol. 5 of 8, 1st Cir. Opinion, 2010-KA-1648, 3/25/11; Appeal Brief, 2010-KA-1648, 9/24/10.

Monday, April 25, 2011, because he did not seek rehearing or file for review in the Louisiana Supreme Court.[19] *Butler v. Cain*, 533 F.3d 314 (5th Cir.2008) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694–95 (5th Cir.2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

While the latter appeal was pending, on August 23, 2010, Ducre submitted an application for post-conviction relief to the Trial Court alleging that the State breached his 1993 plea agreement when it used his prior conviction for possession of stolen property over $500.00 in the multiple bill to enhance his conviction for attempted possession with intent to distribute marijuana.[20]

Several days later, on August 26, 2010, Ducre submitted a second application for post-conviction relief from his conviction for attempted possession with intent to distribute marijuana in which he raised six grounds for relief:[21] (1) trial counsel was ineffective where he failed to file a motion to quash the charge for possession with intent to distribute marijuana after another person confessed to the ownership and was convicted; (2) trial counsel was ineffective when he failed to call an expert to rebut the State's expert in marijuana packaging and resale distribution; (3) trial counsel was ineffective when he failed to pursue prior objections where the Court deferred ruling; (4) trial counsel was ineffective when he failed to object to the State's use of facts other than those

---

[19]The last day was actually Sunday, April 24, 2011; however, weekends and holidays are not included in the calculation of a limitation period when it would otherwise be the last day of the period.

[20]St. Rec. Vol. 5 of 8, Uniform Application for Post-Conviction Relief, 8/30/10 (dated 8/23/10).

[21]St. Rec. Vol. 5 of 8, Uniform Application for Post-Conviction Relief (dated 8/26/10).

charged; (5)(a) trial counsel was ineffective for failure to raise double jeopardy during the sentence enhancement proceedings, (b) the State erred in filing of a multiple bill for imposition of a mandatory life sentence without a grand jury indictment; and (c) Louisiana's habitual offender laws are unconstitutional where they allow enhancement of a sentence based on facts not determined by a jury; and (6) he was denied his confrontation rights where lab reports were admitted into evidence without allowing him an opportunity to confront and cross-examine the analyst who did the testing.

On October 11, 2010, the Trial Court denied the first application as procedurally improper for challenging his habitual offender proceeding which was not a proper ground for seeking post-conviction review.[22]  Ducre inquired as to the status of the second application on March 16, 2011, and submitted a duplicate copy of the application to the clerk of court shortly thereafter.[23]

By order of May 4, 2011, the Trial Court summarily denied as meritless Ducre's ineffective assistance of counsel claims raised as grounds 1, 2, 3, and 4.  The Court also denied as procedurally improper grounds 5(a), (b), and (c) for raising challenges to the habitual offender proceedings which were not appropriate for post-conviction review.  After receiving further briefing on grounds six, regarding the right to a jury in a habitual offender proceeding, the Court dismissed Ducre's sixth claim on May 20, 2011.[24]

The record contains a copy of a reasoned Judgment issued July 15, 2011, from a different section of the state district court which arguably demonstrates an attempt at other collateral review relevant to Ducre's challenge here.  The Judgment addresses Ducre's challenges to the predicate

---

[22]St. Rec. Vol. 5 of 8, Trial Court Order, 10/11/10.

[23]St. Rec. Vol. 5 of 8, Letter from Ducre, 3/16/11; Cover Letter, 4/6/11 (dated 4/1/11).

[24]St. Rec. Vol. 5 of 8, Trial Court Order, 5/20/11; Trial Court Order, 5/4/11; District Attorney Answer, 5/16/11; Reply to State's Answer, 5/26/11.

offenses which were later used to enhance the sentences at issue in this federal petition.[25]  In that order, the state district judge denied relief finding that the application for post-conviction relief was not timely filed as it related to the old convictions and otherwise sought improper post-conviction review to the extent it challenged the habitual offender proceedings in his 2008 and 2009 convictions.

On July 28, 2011, Ducre submitted a writ application to the Louisiana First Circuit seeking review of the Trial Court's May 20 and 24, 2011, orders denying post-conviction relief.[26]  The Court issued its ruling on September 26, 2011, noting that Ducre did not provide sufficient documentation for the Court to consider claims one through four raising ineffective assistance of counsel and denying the application in all other respects.[27]  The Court indicated that Ducre could seek review of the ineffective assistance of counsel claims by submitting the proper documentation.

As directed, on October 20, 2011, Ducre sought further review from the Louisiana First Circuit on claims one through four and submitted additional documentation related to these ineffective assistance of counsel claims.[28]  The Court denied relief without stated reasons.[29]  On August 22, 2012, the Louisiana Supreme Court also denied without stated reasons Ducre's subsequent writ application in which he raised all six of his post-conviction claims.[30]

---

[25]St. Rec. Vol. 5 of 8, Judgment with Reasons, 7/15/11.

[26]St. Rec. Vol. 8 of 8, 1st Cir. Writ Application, 2011-KW-1393, 7/29/11 (dated 7/28/11).

[27]St. Rec. Vol. 5 of 8, 1st Cir. Order, 2011-KW-1393, 9/26/11.

[28]St. Rec. Vol. 8 of 8, 1st Cir. Writ Application, 2011-KW-1980, 10/21/11 (dated 10/20/11).

[29]St. Rec. Vol. 8 of 8, 1st Cir. Order, 2011-KW-1980, 12/29/11.

[30]*State ex rel. Ducre v. State*, 97 So.3d 371 (La. 2012); St. Rec. Vol. 6 of 8, La. S. Ct. Order, 2012-KH-0321, 8/22/12; La. S. Ct. Writ Application, 12-KH-321, 2/1/12 (dated 1/25/12).

## II.    **Federal Petition**

On October 25, 2012, the clerk of this Court filed Ducre's federal petition for habeas corpus relief in which he raised the following grounds for relief:[31] (1) the Trial Court erred in denying the motion to suppress the evidence seized during the traffic stop; (2) the Trial Court erred in denying the motion to suppress evidence seized at the time of arrest; (3) the Trial Court erred in failing to admonish the jury about the prosecutor's improper comments during opening remarks; (4) the evidence was insufficient to prove attempted possession of marijuana with intent to distribute; (5) the Trial Court erred in overruling defendants' objection to the sentences as violative of double jeopardy and as excessive; (6) trial counsel was ineffective where he (a) failed to file a motion to quash the charge for possession with intent to distribute marijuana after Brock confessed to the ownership and was convicted, (b) failed to call an expert to rebut the State's expert in marijuana packaging and resale, (c) failed to pursue prior objections where the Court deferred ruling, (d) failed to object to the State's use of facts other than those charged, and (e) failed to raise double jeopardy during the sentence enhancement proceedings; (7) the State erred in filing a multiple bill for imposition of a mandatory life sentence without a grand jury indictment; (8) Louisiana's habitual offender laws are unconstitutional where they allow enhancement of a sentence based on facts not determined by a jury; and (9) he was denied his right of confrontation where laboratory reports were admitted without an opportunity for him to cross-examine the analyst who did the testing.

The State filed an answer and memorandum in opposition to the petition conceding exhaustion and timeliness, and arguing that several of Ducre's claims are procedurally barred from

---

[31]Rec. Doc. No. 3.

federal habeas review and as to the remaining claims, Ducre has failed to establish that the state courts' denial of relief was contrary to or an unreasonable application of federal law.[32]

Ducre responded to the State's opposition reurging the merits of his claims.[33]  He did not, however, respond to or address the procedural defenses raised in the State's opposition.  Ducre also asserted in his traverse that the State failed to respond to "claim 3 of Ducre's direct appeal" challenging the Trial Court's failure to admonish the jury after the prosecutor's improper opening remarks (claim number three above) and the claim should be deemed admitted by the respondent.[34] The Court first notes that there is no legal basis to automatically deem any part of Ducre's allegations to be admitted by the respondent.  In fact, the law governing § 2254 cases is just the opposite; matters in the respondent's answer "shall be accepted as true" unless there is a traverse or other basis in the record to deem it untrue.  28 U.S.C. § 2254.  There is no mandate that the respondent's failure  to address an issue entitles the petitioner to relief.

Furthermore, Ducre failed to complete the preferred and required form for submitting a petition under § 2254.  Instead, he chose to submit a similarly crafted but condensed likeness in which he presented a recitation of most of his state appellate and post-conviction claims.[35]  Only after close reading of  the pleading can it be discerned that he intended to raise each of those claims as his federal claims under § 2254.

To add to the distortion of what he intended as federal claims, Ducre did not list or categorize such a claim in his memorandum in support.  Instead, the original of Ducre's memorandum (and the

---

[32]Rec. Doc. No. 12.

[33]Rec. Doc. No. 13.

[34]Rec. Doc. No. 13, p. 2.

[35]Rec. Doc. No. 3, p.2.

docketed image) did **not** include a page seven where perhaps the third claim may have appeared. A reading of the memorandum shows that his argument in support of his second claim ends mid-sentence on page six and is followed by argument apparently addressing the prosecutor's opening comment on page eight. Thus, Ducre's "third claim" was not fully included in his memorandum in support for the respondent to properly respond.

Nevertheless, to the extent he meant to assert the claim, his error in failing to include page seven and to otherwise fully address (or fully include) the claim in his memorandum will not be imputed to the respondent. In addition, to the extent he intended to raise the claim, the claim is meritless as discussed later in this report.

## III.   **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[36] applies to this petition, which is deemed filed under the federal mailbox rule on September 26, 2012.[37] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the

---

[36]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[37]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the Court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Ducre's federal habeas petition on October 25, 2012, when the filing fee was received after denial of pauper status. Ducre dated his signature on the petition on September 26, 2012, which is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing to the Court. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his *pro se* petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate did not pay the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 376).

merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  As indicated by the State, the record reflects that Ducre's petition was timely filed, he has exhausted available state court remedies, and several of his claims are in procedural default which defense will be addressed before proceeding the other claims.

## IV.   Procedural Default (Claim Nos. 5(b), 6(e), 7 and 8)

The State recognizes that several of Ducre's claims are in procedural default, having been dismissed by the state courts as procedurally barred from review.  Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

On direct appeal, the Louisiana First Circuit determined that Ducre's claims of excessive sentence were procedurally barred pursuant to La. Code Crim. P. art. 881.1 and related state law for failure to file a written motion to reconsider raising those grounds.  On post-conviction review, the

12

state trial court found that Ducre's claims (here numbers 5(e), 6 and 7) related to the multiple bill proceeding were not proper grounds for post-conviction review.  The higher courts' denial of relief left these determinations as the last reasoned decisions for denial of relief on these issues.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The Court must consider whether the bars to review relied upon by the Louisiana courts prohibit consideration of the claims on federal habeas corpus review.  As discussed above, for a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

### A.     <u>Independent State Grounds</u>

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar.  *Amos*, 61 F.3d at 338.  In this case, the Louisiana First Circuit denied relief of the excessive sentence claims, which were based on grounds of disproportionality and cruel and unusual punishment, pursuant to La. Code Crim. P. art. 881.1 which provides that "[f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review."  *State v. Adair*, 875 So.2d 972, 974-975 (La. App. 5th Cir. 2004).

The state trial court later declined review of Ducre's claims challenging the multiple bill proceedings and counsel's performance related thereto. The well settled doctrine in Louisiana under La. Code Crim. P. art. 930.3 and related case law prohibits challenges to sentencing errors, including ineffective assistance of counsel, on post-conviction review. *See e.g.*, *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996); *State ex rel. Brown v. State*, 870 So.2d 976 (La. 2004); *Richardson v. Cain*, No. 07-2999, 2010 WL 1838642, at *11 (E.D. La. Apr. 1, 2010); *Wallace v. Cain*, No. 06-11271, 2009 WL 3367052 at *14 (E.D. La. Oct. 15, 2009) (Order adopting Report). The Louisiana Supreme Court extended that doctrine to prohibit post-conviction review of habitual offender proceedings, including claims of ineffective assistance of counsel during that proceeding, excessive sentence and other sentencing errors. *State v. Cotton* , 45 So.3d 1030 (La. 2010) (citing La. Code Crim. P. art. 930.3); *see also*, *State v. Thomas*, 19 So.3d 466 (La. 2009). In doing so, the Louisiana Supreme Court specifically distinguished and noted that this post-conviction prohibition did not prevent a defendant from raising the sentencing and multiple bill proceedings errors on direct appeal of the sentencing judgment itself, citing La. Code Crim. P. art. 912(C)(1), which directs for such sentencing matters to be raised on direct appeal.

The state courts' rulings were based on Louisiana law setting forth the requirements for preservation and presentation of claims on appellate and post-conviction review. These rulings were therefore independent of federal law and relied strictly on state procedural requirements. *See e.g.*, *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994); *Washington v. Cain*, 2000 WL 863980, at *4 (E.D. La. June 27, 2000); *see also*, *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

14

B.    **<u>Adequate State Grounds</u>**

The question of the adequacy of a state procedural bar is itself a federal question.  *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Walker v. Martin*, __U.S.__, 131 S. Ct. 1120, 1127-28 (2011); *Glover*, 128 F.3d at 902.  A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citations omitted) *Beard*, 558 U.S. at 60.

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.  *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) and *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999).  Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair.  *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).  In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *See e.g.*, *Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164, at *4 n.10 (N.D. Tx. May 30, 2001); *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). It is not, however, within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to ineffective assistance of counsel claim). Thus, where such foundation and basis does exist, as it does in this case, the bar must stand.

As noted above, the Louisiana First Circuit barred Ducre's excessive sentence claims pursuant to La. Code Crim. P. art. 881.1 for failure to properly preserve the issue for appeal by filing a motion to reconsider. The record supports the conclusion that no such claim was preserved in the state trial court before the appeal. Furthermore, the federal courts have consistently found this state procedural bar to be evenhandedly applied and to be adequate to bar federal review. *Young v. Travis*, No. 2011 WL 494811, at *7 (E.D. La. Jan. 13, 2011), *adopted by* 2011 WL 494802, at *1 (E.D. La. Feb. 4, 2011); *Semien v. Warden*, No. 08-0162, 2009 WL 1393316, at *6-7 (W.D. La. May 12, 2009) (Order adopting Report and Recommendation); *Weaver v. Cain*, No. 04-1642, 2006 WL

2792427, at *12 (E.D. La. Sep. 25, 2006) (Order adopting Report and Recommendation); *Fontan v. Ieyoub*, No. 94-1416, 1994 WL 374296, at *5-6 (E.D. La. Jul. 5, 1994).

The state trial court relied on well-settled Louisiana doctrine arising from La. Code Crim. P. art. 930.3 and related case law, such as *State ex rel. Melinie* and *State v. Cotton*, to bar review of Ducre's claims challenging his multiple offender proceedings, including ineffective assistance of counsel in that proceeding.  The federal courts have repeatedly held that the La. Code Crim. P. art. 930.3 and its progeny are both independent and adequate state law grounds for dismissal which bar review of similar claims by the federal courts in a habeas corpus proceeding.  *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Art. 930.3, *State ex rel. Melinie*) (Table, Text in Westlaw); *Taylor v. Cain*, No. 07-3929, 2008 WL 4186883, at *16 (E.D. La. Sep. 10, 2008); *Williams v. Cain*, No. 05-0710, 2008 WL 3363562, at *8 (E.D. La. Aug. 8, 2008); *Madina v. Cain*, No. 05-2126, 2006 WL 2726506, at *3 (E.D. La. Sep. 20, 2006); *Johnson v. Andrews*, No. 05-0413, 2006 WL 2294864, at *4 (E.D. La. Aug. 4, 2006); *Williams v. Miller*, No. 05-0086, 2006 WL 2087867, at *9 (E.D. La. Jul. 24, 2006); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086, at *8 (E.D. La. Jun. 30, 2005); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123 (E .D. La. Apr. 4, 2001) (Schwartz, J.); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820 (E.D. La. Jul. 31, 2000); *Ardis v. Cain*, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999).

For the foregoing reasons, the bars imposed on Ducre's claims of excessive sentence and challenges to the multiple offender proceeding including ineffective assistance of counsel during those proceedings are supported by the record and are adequate to foreclose review by this federal court.  Because the Louisiana courts' decisions rested on independent and adequate state rules of

procedural default, this court will not review Ducre's claims unless he established one of the following exceptions.

### 1.     <u>Cause and Prejudice</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *see Engle v. Isaac*, 456 U.S. 107, 128-29 & n.33 (1982))

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486; *see also Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309, 1316 (2012) (discussing when counsel's error may be cause to overcome a procedural default) (citing *Coleman*, 501 U.S. at 753, 755).

In this case, Ducre filed a traverse but did not offer any cause for the default which would excuse the procedural bars imposed by the Louisiana courts and raised by the respondent in this court. The Court's review of the record does not support a finding that any factor external to the defense prevented him from raising the claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir.

1997) (citing *Engle*, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  *Ratcliff v. Estelle*, 597 F.2d 474, 477-78 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Ducre's defaulted claims are therefore procedurally barred from review by this federal habeas corpus court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[38]

### 2.    <u>Fundamental Miscarriage of Justice</u>

Ducre may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  When the petitioner has not adequately asserted his

---

[38]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument *sua sponte* but may do so in its discretion.  *Id.*

actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Ducre does not present any claim and the record contains nothing to suggest or establish his actual innocence on the underlying conviction. His claims instead address alleged procedural and evidentiary failings in the state criminal proceedings and not his actual innocence. He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default. He, therefore, has failed to overcome the procedural bar to his claims. The claims of excessive sentence (Claim No. 4(b)) and those challenging the multiple offender proceedings, including ineffective assistance of counsel therein (Claim Nos. 5(e), 6 and 7), are procedurally barred and should be dismissed with prejudice.

## V.      **Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410.  The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is

whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).   The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.   *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## VI.   Denial of Motions to Suppress (Claim Nos. 1 and 2)

In his first two claims, Ducre alleges that the state trial court erred in denying his pretrial motions to suppress the evidence seized from his car and from his pocket without warrants and without probable cause in violation of the Fourth Amendment.   The respondent block-quotes the state courts' opinion and urges that Ducre has not established that the denial of relief on these claims was contrary to federal law.

However, this Court does not reach the merits of Ducre's claim for habeas corpus relief.   It is well settled that Fourth Amendment violations are generally not cognizable on federal habeas review.   *Stone v. Powell*, 428 U.S. 465, 480-81 (1976).   In *Stone*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."   *Id*. at 494 (footnotes omitted).   A "full and fair" hearing as contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court.   *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).

The United States Court of Appeals for the Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, 577 F.2d at 1192. "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under Stone." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980).

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. *Janecka*, 301 F.3d at 320-21. Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone* bar to apply. *Id.* at 320.

The Fifth Circuit also has held that the *Stone* bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim. *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978); *Woodard v. Thaler*, 702 F. Supp.2d 738, 759-60 (S.D. Tx. 2010) ("Even if the state court improperly applied its own procedural law in refusing to consider Woodard's Fourth Amendment argument," the *Stone* bar still applies.) (citing *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006)). Likewise, even when the state courts err in the disposition of the Fourth

Amendment claim on procedural grounds, the *Stone* bar still applies "with equal force." *Williams*, 609 F.2d at 219-20.

Therefore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on their merits, the rationale of *Caver* dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *see also Janecka*, 301 F.3d at 321 (same). Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis*, 803 F.2d at 1372. Ducre has not met this burden.

Ducre does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims. On the contrary, he recognizes that his Fourth Amendment claims were addressed in the state courts in the pretrial proceedings and on direct appeal. He therefore has not alleged or demonstrated that Louisiana state courts routinely or systematically preclude such litigation. Moreover, "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) (Duval, J.) (order adopting referenced report and recommendation).

As mentioned, the record demonstrates that Ducre had ample opportunity to, and he and his counsel did, raise his Fourth Amendment claims both pretrial and on direct appeal. The state trial

court held an evidentiary hearing on Ducre's motions to suppress the evidence prior to trial on April 22, 2008, after which the Trial Court denied the motions as meritless.[39] Ducre's appellate counsel also raised the issues again on direct appeal to the Louisiana First Circuit, and the Court found the claims meritless, finding no error in the Trial Court's denial of the motions to suppress after full consideration of the claims.[40] That review was confirmed by the Louisiana Supreme Court's denial of his post-appeal writ application.[41]

The record, therefore, demonstrates that Ducre was provided with ample opportunity to present his Fourth Amendment claims to the state courts, although his efforts were unsuccessful. After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quotations and citation omitted). The fact that Ducre may disagree with the state courts' decisions to deny relief is not sufficient to overcome the *Stone* bar to federal habeas corpus review. *Janecka*, 301 F.3d at 320-21. The review on post-conviction at all levels of the state courts was sufficient to meet due process requirements and to prohibit review of his Fourth Amendment claims in this federal court.

The Court recognizes that Ducre also lists references the Fifth and Sixth Amendments in the caption to this issue in his memorandum. He fails, however, to discuss his rights under either amendment or formulate any claim under either for purposes of this Court's habeas review. Neither

---

[39]St. Rec. Vol. 1 of 8, Trial Minutes, 4/22/08; Trial Transcript, pp. 157-175, 4/22/08; St. Rec. Vol. 2 of 8, Trial Transcript (continued), pp. 176-177, 4/22/08.

[40]*State v. Ducre*, 2008 WL 5377668, at *5-*7; St. Rec. Vol. 4 of 8, 1st Cir. Opinion, 2008-KA-1644, pp. 9-13, 12/23/08.

[41]*State ex rel. Ducre*, 23 So.3d at 939; St. Rec. Vol. 6 of 8, La. S. Ct. Order, 2009-KH-0355, 12/18/09.

the Fifth nor the Sixth Amendments control the suppression of physical evidence based on lack of probable cause or the lack of a warrant, the indicated reasons for Ducre's claim. Of course, the *Stone* prohibition would not apply to legitimate claims brought under those provisions related to inculpatory statements made without waiver of one's rights, *Withrow v. Williams*, 507 U.S. 680, 683 (1993), or to challenges to counsel's assistance related to the suppression proceedings, *Kimmelman v. Morrison*, 477 U.S. 365, 379 (1986). Neither of those claims are before this Court.

Even under the broadest reading, the Court can not reconcile the citation to either the Fifth or Sixth amendment with the claims raised by Ducre or with the facts of his case. That is, there was no statement by Ducre as the subject of a suppression motion or hearing to invoke the Fifth Amendment. Further, it is clear that his counsel moved to suppress the evidence and Ducre has not challenged his counsel's performance during the suppression hearing to raise a claim under the Sixth Amendment.

For these reasons, the Court finds that, under the most liberal of constructions, Ducre has not raised claims under either the Fifth Amendment or Sixth Amendment arising out of the state courts' denial of his motions to suppress the physical evidence being challenged here. The mere citation to these constitutional provisions does not suffice to state a cognizable habeas claim under the circumstances, even considering Ducre's *pro se* status. *Accord Blackledge v. Allison*, 431 U.S. 63, 75-76 (1977) (vague and conclusory habeas claims may be grounds for summary dismissal); *see also*, *Handa v. Clark*, 401 F.3d 1129, 1132 (9th Cir. 2005) ("a mere passing reference to a constitutional claim is not sufficient to raise that claim before the district court . . ."); *Kohn v. Michigan State Police*, No. 01-71923, 2001 WL 902715, at *1 (E.D. Mich. Jun. 6, 2001) ("In order for a claim in a habeas petition to be sufficient, it must describe a substantial infringement of a

constitutional right and include a factual statement which, if true would entitle the petitioner to relief.") (citing *Gardner v. Norris*, 949 F. Supp. 1359, 1368 (E.D. Ark. 1996)); *Wegmann v. Jackson*, No. 09-CV-1935, 2010 WL 1486937, at *12 (N.D. Ohio Mar. 22, 2010) ("a mere general reference to a broad constitutional guarantee is insufficient to state a claim for [habeas] relief . . ."), *report adopted by Wegmann v. Jackson*, 2010 WL 1486951, at *1 (N.D. Ohio Apr. 13, 2010).

**VII.**   **Admonishing the Jury (Claim No. 3)**

Ducre alleges that he was denied due process when the Trial Court failed to admonish the jury to disregard the prosecutions' improper opening remarks.  He specifically alleges that the prosecutor erred in commenting during opening remarks on the veracity of the affidavit and testimony of Roger Brock, who pled guilty to the ownership of the marijuana found in the car. Ducre complains that the Trial Court erred in failing to admonish the jury to disregard the comments after overruling defense counsel's request to strike the comments.  As noted above, the State did not respond to this issue, which was not clearly raised before this Court.

Ducre's counsel urged this claim on direct appeal and the Louisiana First Circuit found the claim to be without merit.  The Court recognized that La. Code Crim. P. art. 774 limits the scope of opening and closing arguments in a criminal case to the evidence admitted or lack thereof, conclusion of fact that can be drawn therefore, and the applicable law.  Louisiana case law also dictates that the arguments shall not appeal to prejudice, although the prosecution is granted wide latitude.  In addition, the Court noted that Louisiana's evidentiary rules, specifically La. Code Ev. art 607(B), prohibit the attack on a witnesses' credibility before the witness is sworn to testify. Under La. Code Ev. art. 771, a trial court has the discretion to either grant a mistrial or admonish the jury where the arguments are irrelevant or immaterial or might create prejudice against either

party.  The Court also indicated that Louisiana law would not call for reversal of a conviction unless a court was thoroughly convinced that the improper argument influenced the jury or contributed to the verdict.

Relying on the record, the Louisiana First Circuit found that the general instructions given to the jury by the trial court on the State's burden of proof and on how to consider the arguments of counsel were sufficient guidance for the jury.  Alternatively, the Court held that even if the trial court erred in overruling the objection to the prosecutor's comment, in light of the jury instructions and the evidence, it was not thoroughly convinced that the prosecutor's statements influenced the jury or contributed to the verdicts.  The Louisiana Supreme Court also denied relief on this issue without added reasons.

Habeas corpus review is, of course, limited to questions of constitutional dimension, and federal courts generally do not review evidentiary rulings made under state law.  *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir.1992); *see Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).  States are free to implement procedures regarding the admissibility of evidence and argument by counsel, provided that those procedures do not infringe on a constitutional guarantee.  *Burgett v. Texas*, 389 U.S. 109, 116 (1967); *Nees v. Culbertson*, 406 F.2d 621 (1969).  Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  *Lisenba v. California*, 314 U.S. 219, 236-37 (1941); *Swarthout*, 131 S. Ct. at 861-62; *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

Thus, to whatever extent Ducre argues that the state trial court erred under state law in allowing the prosecutor's argument to be considered by the jury without an admonition, this court cannot review the claim. The Court, instead, will consider Ducre's claim only to the extent the claims allege a violation of his federal due process rights.

Claims asserting violation of due process under the Fourteenth Amendment present a mixed question of law and fact. *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000). Under the applicable standard of review, this court must determine if the state court's decision to admit the evidence is contrary to or involved an unreasonable application of Supreme Court precedent.

The state trial court's overruling of Ducre's request for the jury to be admonished would justify federal habeas corpus relief only if it was "'error . . . so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.'" *Hernandez v. Dretke*, 125 F. App'x 528, 529, 2005 WL 361812 at *1 (5th Cir. Feb. 16, 2005) (quoting *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988)). To obtain relief, the petitioner must show that the state trial court's error, if any, had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). The petitioner must show that "there is more than a mere reasonable possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir.1996) (emphasis omitted). An error is harmless, however, when the evidence of the defendant's guilt is overwhelming. *Taylor v. Cain*, 545 F.3d 327, 336 (5th Cir. 2008). Brown has not demonstrated error on the part of the state trial court in denying the request to admonish the jury.

As applied by the state appellate court, Louisiana law sets forth the grounds for a jury to be admonished by the trial court under certain circumstances:

In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

(1)     When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or

(2)     When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

La. Code Crim. P. art. 771.[42]

The Louisiana courts did not find that the prosecutor's comments were irrelevant, immaterial or prejudicial as articulated in Article 771. Instead, the Trial Court heard the prosecutor's argument that his opening comments were relevant to address a competing theory of innocence sought to be offered by Ducre and based on the affidavit provided by the defense on the morning of trial when Brock was believed to be unavailable to testify. The Trial Court overruled Ducre's objections and deferred a decision on giving specific instructions if the evidence did not "bear out" the relevance of the comment.[43] Brock later testified and was questioned about the veracity of his affidavit and his claims that Ducre had no knowledge of the drugs. Once he testified, the facts did "bear out."

The Trial Court found no basis to give the admonition. The Louisiana First Circuit also did not find error in that decision based on Louisiana law. Instead, the appellate court determined that the general jury instructions given by the Trial Court were sufficient to guide the jury in the weight

---

[42]The referenced La. Code Crim. P. art. 770 mandates a mistrial when a remark or comment is made during trial that refers to the "(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury; (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; (3) The failure of the defendant to testify in his own defense; or (4) The refusal of the judge to direct a verdict." These provisions are not relevant or at issue here.

[43]St. Rec. Vol. 3 of 8, Trial Transcript (continued), p. 356, 4/22/08.

to be given the opening arguments.  Thus, the appellate court found that no other, more specific admonition was required based on the overwhelming evidence of Ducre's guilt and in light of Brock's testimony at trial.

Ducre has offered nothing to establish that these findings were contrary to or an unreasonable application of Supreme Court law addressing fundamentally fair trials.  The record does not indicate that the state trial court actually erred or that the prosecutor's opening comments had an inappropriate prejudicial impact on  the verdict to trigger due process review.

Further, Ducre has not shown that the lack of a specific admonition rendered his trial fundamentally unfair.  The Court has reviewed the sufficiency of the evidence as reported *infra* and agrees that Ducre received a fair trial in spite of the lack of admonition in light of the evidence of guilt, coupled with the fact that the jury did in fact hear Brock testify.

Furthermore, even under federal law, the comments made by the prosecutor were not constitutionally impermissible.  Similar to the court error issue addressed above, improper jury argument by the State does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair in violation of due process.  *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988).  As above, due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987).  The prosecutor's remarks must be evaluated in the context of the entire trial.  *Greer v. Miller*, 483 U.S. 756, 765-66 (1987) (citing *Darden*, 477 U.S. at 179); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985).  To obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must

demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Jones*, 864 F.2d at 356; *Hogue v. Scott*, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).

In this case, the comments made by the prosecutor during opening arguments did not violate due process.  A reading of opening comments demonstrates that the prosecutor referenced the sudden appearance of Brock's affidavit and to challenge the proposed theory that Ducre was innocent based on the statements of this absentee witness.  Brock later appeared to testify before the jury.  The prosecution and the defense each had the opportunity to question Brock.  This allowed the jury to judge Brock's credibility based on his testimony and not the prosecutor's opening comments.  Without a showing of some prejudicial influence, Ducre fails to state a basis for federal habeas relief arising from the prosecutor's opening comments.

For the foregoing reasons, the state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court law.  Ducre is not entitled to relief on this claim.

## VIII.   Sufficiency of the Evidence (Claim No. 4)

Ducre alleges that the evidence presented by the State was not sufficient to support the verdict of attempted possession of marijuana with intent to distribute.  Ducre's argument is based on his erroneous conclusion or assumption that Detective Godwin lacked probable cause to search the car which led to the seizure of the bag of marijuana protruding from underneath the driver's seat.  He also contends, under a broad reading, that the State offered no evidence that he knew the marijuana was under the seat, that he intended to distribute marijuana and that the State failed to exclude other reasonable hypotheses of his innocence.

Again, without any analysis or discussion, the State block-quotes the state appellate court decision. Based on this block quote, the State contends that Ducre has not established that the denial of relief was contrary to federal law.

Ducre's counsel raised this issue on direct appeal. The Louisiana First Circuit reviewed the evidence and testimony and resolved that a rationale trier of fact could have excluded every reasonable hypothesis of innocence and chosen to find certain witnesses more credible than others. The Court determined that the evidence was sufficient to establish each element of the crime as required by *Jackson v. Virginia*, 443 U.S. 307 (1979) and related state law. This was the last reasoned opinion on the issue.

*Jackson*, relied on by the state courts, is the appropriate standard for determining the sufficiency of evidence and requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Claims of insufficient evidence present a mixed question of law and fact. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). The Court, therefore, must give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992).

As an initial matter, Louisiana law allows for a crime to be proven by both direct and circumstantial evidence. Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas

33

corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley*, 968 F.2d at 467 (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord State v. Williams*, 693 So.2d at 208. The appropriate standard for this Court remains *Jackson*.

On federal habeas review, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). The Court's review also does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the

34

evidence, and to draw reasonable inferences from basic facts to ultimate facts").   All credibility choices and conflicting inferences must be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

Under *Jackson*, the Court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial.") (quoting *Jackson*, 443 U.S. at 324).  To determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Ducre was convicted of attempted possession of marijuana with intent to distribute.  The "attempt" element is defined by La. Rev. Stat. Ann. § 14:27 which provides in pertinent part that "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object."  To convict a defendant for the relevant crime in this case, possession of marijuana with intent to distribute, the State must prove beyond a reasonable doubt that the defendant knowingly and intentionally possessed the marijuana and had the requisite intent to distribute it.  *State v. Fobb*, 91 So.3d 1235, 1242 (La. App. 3d Cir. 2012) (citing *State v. Hollier*, 37 So.3d 466, 470 (La. App. 3d Cir. 2010)).  Intent to distribute a controlled substance like marijuana may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of the intent to distribute.  *State v. Bobo*, 77 So.3d 1, 5 (La. App. 2d Cir. 2011) (citations omitted).  Some factors used by Louisiana courts to determine whether the State's circumstantial evidence is sufficient to prove intent to

distribute are: (1) whether the defendant ever distributed or attempted to distribute illegal drugs; (2) whether the drug was in a form usually associated with distribution; (3) whether the amount was such to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute.  *Id*.

Possession of the drug can be established by actual physical possession or by constructive possession of the narcotic.  *State v. Major*, 888 So.2d 798, 802 (La. 2004).   A person can be found to be in constructive possession of a controlled substance if the State can establish that he had dominion and control over the narcotics, even in the absence of physical possession.  *Id*.  Although mere presence in an area where drugs are located does not constitute constructive possession, Louisiana courts consider several factors in determining whether a defendant exercised sufficient control and dominion to establish constructive possession.  These factors include: (1) his knowledge that drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug consumption; (5) his physical proximity to where the drugs were found.  *Id*. at 802.   Guilty knowledge can be established by showing awareness of the illegal drugs in one's actual or constructive possession.  *State v. Carter*, 981 So.2d 734 (La. App. 3d Cir. 2008); *State v. Lathers*, 868 So.2d 881 (La. App. 5th Cir. 2004).

The evidence presented at trial established that, after being pulled over, Ducre immediately exited his car before the officers approached him.[44]   Detective Godwin leaned into the driver's

---

[44]St. Rec. Vol. 3 of 8, Trial Transcript (continued), p. 362 (Detective Ben Godwin), p. 386 (Deputy Ricky Steinert), 4/22/08.

window where the drugs were discovered before he called out for Deputy Steinert to detain Ducre.[45]

The plastic bag holding the drugs was seen protruding from under the driver's seat which was where

Ducre sat and which was within his reach.[46]  The State also presented evidence that the marijuana

was contained in a large storage bag containing six smaller bags with holding almost even portions

of marijuana and with a total weight of 35.29 grams, or just over an ounce.[47]  The expert testimony

indicated this to be packaged for distribution, especially considering that there were no items found

in the car to indicate personal use, such as rolling paper, pipes, bongs, or tobacco wrappers.[48]

Based on the record, a rational trier of fact could have concluded that Ducre knew the drugs

were under his seat and that the drugs were packaged and in a quantity indicative of an intent to

distribute.  A rational jury could have drawn from the evidence that Ducre's immediate exit from

his car before the officers could do so was an effort to distance himself and the officers from the

location of the drugs.  Likewise, it also was reasonable for the jury to conclude that Ducre ran from

the scene, because he knew the drugs had been discovered.  There would have been no reason for

him to run simply because he was on parole if he did not know that the drugs were in the car.  The

evidence  was also sufficient for a jury to reject the testimony of Brock and to reach the conclusion

that Ducre knew the drugs were in the car when they were found plainly protruding from beneath

his driver seat.

The evidence presented by the State was more than sufficient for a reasonable jury to find

constructive possession of the marijuana, which was in packaging and sufficient quantity to establish

---

[45]*Id*., p. 364 (Godwin), p. 386 (Steinert).

[46]*Id*., p. 364 (Godwin).

[47]*Id*., pp. 433-36, 439 (Lieutenant William Hart).

[48]*Id*., pp. 436-37 (Hart), p. 364 (Godwin).

an intent to distribute satisfying the elements of the attempted offense. Ducre has failed to show that the state court's denial of relief on this issue was not contrary to, or an unreasonable application of, *Jackson*.  He is not entitled to relief on this claim.

## IX.    Multiple Offender Sentences and Double Jeopardy (Claim No. 5(a))

Ducre alleges that the state trial court erred in relying on the same two predicate offenses to enhance both of his sentences to life imprisonment, including one without benefit of parole, probation or suspension of sentence.  He argues that this violated the protections against double jeopardy.  The State again simply asserts that Ducre does not establish that the denial of relief on this issue was contrary to federal law.

As an initial matter, the Court notes that Ducre is no longer serving a life sentence for the second count, second offense possession of marijuana.  He was resentenced by the Trial Court after remand from the Louisiana First Circuit to serve five years in prison concurrent with the other sentence.  Any claim arising from the vacated life sentence on that charge is now moot, just as it was when the count was remanded for resentencing by the Louisiana First Circuit.  The Court recognizes, however, that Ducre's current sentence for count two is still considered a second or repeat offense. Therefore, to the extent his arguments may be relevant as to that count, the double jeopardy claim is no less without merit for the following reasons addressed to the life sentence remaining as to count one.

Ducre's counsel first raised these claims on direct appeal to the Louisiana First Circuit.  The Court denied relief on the claim finding that the Double Jeopardy Clause did not apply to habitual offender proceedings.  This was the last reasoned opinion on the issue where the Louisiana Supreme Court denied subsequent relief without stated reasons.

38

A double jeopardy claim raises a mixed question of law and fact for purposes of this Court's federal habeas review. *Carlile v. Cockrell*, 51 F. App'x 483, 2002 WL 31319380, at *1 (5th Cir. 2002) (applying the AEDPA's mixed question standard to a double jeopardy claim); *Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) (same).

The Double Jeopardy Clause of the Fifth Amendment protects an individual against three types of exposure: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). However, an enhanced sentence imposed on a repeat offender generally is not viewed as either a new jeopardy or as an additional penalty for the earlier crimes; instead, it is simply a stiffer penalty for the latest crime. *Monge v. California*, 524 U.S. 721, 727-28 (1998) (citing *Gryger v. Burke*, 334 U.S. 728, 732 (1948) and *Moore v. Missouri*, 159 U.S. 673, 678 (1895)); *United States v. Watts*, 519 U.S. 148, 154 (1997). Thus, the Supreme Court has historically held that double jeopardy protections do not apply to sentencing proceedings. *Monge*, 524 U.S. at 727 (citing *Bullington v. Missouri*, 451 U.S. 430, 438 (1981) and *Nichols v. United States*, 511 U.S. 738, 747 (1994)).

Similarly, the Fifth Circuit has held that a State does not offend double jeopardy if it sentences a defendant as a habitual offender more than once. The State may "use the same prior conviction to enhance sentences on more than one subsequent conviction." *Bennett v. Little*, 71 F.3d 879, 1995 WL 727392, at *3 (5th Cir. 1995) (Table, Text in Westlaw) (citing *Sudds v. Maggio*, 696 F.2d 415, 417 (5th Cir. 1983)). Thus, the mere fact that the same convictions may have been used to enhance more than one sentence is not a double jeopardy concern.

For these reasons, the state courts' denial of relief was not directly in line with Supreme Court precedent which does not extend double jeopardy considerations to multiple offender proceedings.  Ducre is not entitled to relief on this claim.

**X.      Ineffective Assistance of Trial Counsel (Claim Nos. 6(a)-(d))**

Ducre alleges that his private trial counsel provided ineffective assistance when he (a) failed to file a motion to quash the charge for possession with intent to distribute marijuana after Brock confessed to the ownership and was convicted, (b) failed to call an expert to rebut the State's expert in marijuana packaging and resale distribution, (c) reurge the objection to and ask for admonishment because of the prosecutor's comments during opening arguments after Brock testified, and (d) failed to object to the State's use of facts other than those charged to pursue the verdict.  The State again simply asserts without much discussion that Ducre does not establish that the denial of relief on this issue was contrary to federal law.

Ducre asserted these arguments on state post-conviction review.  The Trial Court, denied relief finding the claims to be meritless without further explanation.  The Louisiana Fifth Circuit and Supreme Court also denied relief without stated reasons.  *See Ylst*, 501 U.S. at 802.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).  The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, is the appropriate standard for judging the performance of counsel.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient

performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial

41

tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 792. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S. Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

### A.    Failure to file Motion to Quash

Ducre alleges that his counsel should have filed a motion to quash the charge of possession with intent to distribute marijuana after Brock confessed to the ownership of the marijuana and was convicted for that charge prior to Ducre's trial. The State argues that Louisiana law allows for more than one person to be convicted of possessing the same drugs leaving no basis for a motion to quash.

In Louisiana, a person is considered to be a "principal" to a crime when he is "concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." La. Rev. Stat. Ann. § 14:24; *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)). In keeping with this, a person may be deemed to be in joint constructive possession of a drug in the actual custody of another, if he willfully and knowingly shares with the other person the right to control the drug. *State v. Toups*,

833 So.2d 910, 913 (La. 2002) (quoting *State v. Trahan*, 425 So.2d 1222, 1226 (La. 1983) and citing *State v. Smith*, 257 La. 1109, 1114, 245 So.2d 327, 329 (1971)); *State v. Dowell*, 857 So.2d 1098, 1104 (La. App. 4th Cir. 2003) (citing *State v. Smith*, 257 La. at 1109, *State v. Harris*, 647 So.2d 337 (La. 1994) and *State v. Bell*, 566 So.2d 959 (La. 1990)).

As discussed previously, the drugs at issue were discovered beneath Ducre's driver seat both visible and within his immediate grasp. This constituted a legitimate basis to charge him with possession. Thus, because the State had a plausible theory on which to base the charge, his counsel had no legal reason to file a motion to quash. Counsel did not act deficiently in failing to file a meritless motion. *See Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also*, *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

Having failed to establish a deficiency in counsel's performance, Ducre has not shown that the state courts' denial of relief was contrary to *Strickland*. He is not entitled to relief on this claim.

### B.   Failure to Call a Defense Expert

Ducre alleges that his counsel provided deficient and prejudicial performance when he failed to call an expert to rebut the State's expert testimony establishing that the marijuana was packaged for street sale or distribution. The State alleges that the claim is speculative and meritless.

As a basic premise, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a

witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  In addition, counsel's "'[f]ailure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (*quoting Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).

"Unless a crucial and important legal issue rests on the reliability of scientific evidence, . . . counsel is not constitutionally required to seek out a contradictory expert so long as the decision not to call an expert is informed and based on a strategic decision." *See Bowers v. Quarterman*, 497 F.3d 459, 472 (5th Cir. 2007).  Thus, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999).  Ducre has not established that counsel's performance fell below constitutional standards.

As discussed previously and shown from the trial record, the marijuana retrieved from Ducre's car was packaged in small, pre-weighted bags contained within the one larger bag, which Brock all but confirmed was ready for sale on the street.  Ducre's retained counsel cross-examined the State's expert witness, Lieutenant Hart, attempting to challenge his conclusions about the packaging, the weight, and the value of the marijuana.  This cross-examination demonstrated that counsel was prepared and held the knowledge necessary for the attack on Hart and his conclusions related to packaging and resale values.  *See Bowers v. Quarterman*, 497 F.3d 459, 472 (5th Cir.

2007) (citing *Dees v. Caspiri*, 904 F.2d 452, 455 (8th Cir. 1990) ("Counsel had a duty to garner the expertise necessary to cross examine [the state's expert].").

It is reasonable to conclude from the record that defense counsel chose to undermine Hart's findings through cross-examination at trial rather than risk bringing in another expert who may have confirmed Hart's findings to the detriment of Ducre's defense.  The decision not to call an expert under the circumstances of this case was well within counsel's trial strategy discretion.  *Dees*, 904 F.2d at 454-55.  Affording trial counsel strategic decisions the due deference required by the applicable law, his decision not to hire an expert for this purpose was not deficient.

Furthermore, Ducre has not established that there was or is an expert to testify that the pre-weighted bags of marijuana were not packaged for distribution, especially when there were no other items indicative of personal use.  Without such a showing, he has failed to raise a basis for this claim.  *See Tinsely v. Million*, 399 F.3d 796, 806 (6th Cir.), *cert. denied*, 546 U.S.1044 (2005) (defendant presented no evidence suggesting that "there were experts to be had" who would have contradicted State's experts; "conclusory allegations that such experts exist" are insufficient to show counsel was ineffective in failing to hire a defense expert).  He is not entitled to relief on this issue.

### C.    **Failure to Pursue Prior Objections**

In this claim, Ducre alleges that his counsel erred in failing to reurge his objection to the prosecutor's opening comments challenging Brock's credibility.  He reiterates that, when defense counsel's objection was denied following the prosecutor's opening statement, the judge indicated that he would reconsider if the facts did not "bear out."  Ducre, under a broad reading, contends that the facts did not "bear out" and counsel should have reurged the motion to strike the comment and

for an admonition for the jury.  The State apparently contends that Brock's affidavit mentioned in the opening argument was appropriately used by the State during cross-examination.

For the reasons set forth previously in this report, Ducre failed to establish that the comments made by the prosecutor during opening arguments were improper or otherwise required the state trial court to admonish the jury.  Because there was no prior error, the record does not demonstrate that counsel's was required to reurge the baseless request when Brock testified.

As indicated previously, the failure to urge a meritless motion or baseless objection is not deficient performance.  *See Smith*, 907 F.2d at 585 n. 6; *see also*, *Koch*, 907 F.2d at 530; *Wood*, 503 F.3d at 413. Having failed to establish a deficiency in counsel's performance, Ducre has not shown his entitlement to relief on this claim.

### D.      Failure to Object to Trial Evidence

Ducre alleges that the factual basis for the charges in the original bill of information were altered and amended by the State during trial which allowed his conviction to be based on facts and elements not charged.  He claims that his counsel acted prejudicially in failing to confront the State's reliance on the uncharged facts and elements.  The State argues that there is no requirement that the bill of information contain all of the details of the crimes charged.

Ducre has failed to provide any specificity regarding the particular facts or elements of which he complains.  His claim is at best conclusory and beyond any interpretation under the broadest of readings accorded to *pro se* filings.  As mentioned previously in this report, a conclusory claim unsupported by fact or law will not be grounds for federal habeas relief.  *Accord Blackledge*, 431 U.S. at 75-76; *Kohn*, 2001 WL 902715, at *1.

In addition, the Court has already discussed in detail that the facts at trial were sufficient to establish the elements of the statutorily included responsive verdict of attempted possession with intent to distribute marijuana.  La. Code Crim. P. art. 814(49).  Having reviewed the entire record, there is no question that counsel's performance in challenging the State's evidence and presenting Ducre's defense was constitutionally sound under *Strickland*.  While the attempted crime was not specifically charged, it was statutorily mandated and part of the instructions given to the jury.  The defense presented by Ducre's counsel was to challenge and create doubt as to any connection between Ducre and the drugs.  Counsel competently challenged all of the evidence the State produced at trial, even that which may have brought in facts not specifically alleged in the bill of information.  The fact that the defense was not successful does not render counsel's performance deficient or prejudicial.  *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Without any basis to further decipher Ducre's cryptic and conclusory claim, he has failed to establish that the state trial court's denial of relief on this issue was contrary to *Strickland*.

## XI.   Denial of Rights Under the Confronation Clause (Claim No. 9)

Relying on the Supreme Court decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009), Ducre alleges that his constitutional rights were violated when the laboratory reports of the weighed and tested marijuana from the car were admitted into evidence without allowing him an opportunity to confront and cross-examine the analyst who prepared the reports.  As will be discussed *infra*, the State incorrectly argues that Supreme Court law at the time Ducre was convicted did not require that a defendant be granted the right to confront the preparer of this type of scientific report since Ducre was convicted prior to the issuance of *Melendez-Diaz*.  Alternatively, the State

correctly argues that Ducre was on notice of the State's intent to use the report and his rights were protected.

It is well settled that the Confrontation Clause prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004) (emphasis added). On June 25, 2009, the United States Supreme Court issued its opinion in *Melendez-Diaz* in which the Court held that an expert's report is "functionally identical" to a testimonial statement under *Crawford*. *Melendez-Diaz*, 557 U.S. at 310-11. The Court determined, therefore, that an expert's report is not admissible when the expert who prepared the report does not appear at trial and the defendant has not had a prior opportunity for cross-examination. *Id.*

When the Supreme Court announces a new rule of law, a person whose conviction is **already final** may not rely on the Court's decision unless the Court makes the rule retroactively applicable on collateral review.[49] *See Peterson v. Cain*, 302 F.3d 508, 511 (5th Cir. 2002) (citing *Teague v. Lane*, 489 U.S. 288, 301 (1989). As determined previously in this report, Ducre's conviction for attempted possession with intent to distribute marijuana became **final** on March 18, 2010. His conviction for second offense possession of marijuana became **final** on April 25, 2011. Clearly, **both** convictions were **final** for purposes of federal habeas review (and even under state law) well **after** *Melendez-Diaz* was issued on June 25, 2009. The non-retroactivity of *Melendez-Diaz* is not an issue here. Therefore, that portion of the State's argument that *Melendez-Diaz* was not controlling precedent on which Ducre can rely is erroneous and must be rejected.

---

[49]*Teague* also included two exceptions not applicable here: "[W]atershed rules of criminal procedure" and rules placing "conduct beyond the power of the [government] to proscribe" apply on collateral review, even if novel. *Teague*, 489 U.S. at 311 (internal quotation marks omitted).

As indicated above, the Supreme Court held in *Melendez-Diaz*, that a defendant is entitled to confront the person who prepared the critical forensic report sought to be admitted at trial.  *Id*., 557 U.S. at 310-11; *see also*, *Bullcoming v. New Mexico*, __ U.S. __, 131 S. Ct. 2705, 2713 (2011) (a defendants right of confrontation is violated when the expert who testifies at trial did not participate in or observe the testing or examination underlying the report, instead of the expert who actually performed the testing or examination).  However, the Supreme Court recognized that a defendant who is placed on notice of the prosecutor's intent to use a forensic report also is on notice that he must exercise his right of confrontation to protect the right.

> The defendant always has the burden of raising his Confrontation Clause objection; notice-and-demand statutes simply govern the time within which he must do so. States are free to adopt procedural rules governing objections.  *See Wainwright v. Sykes*, 433 U.S. 72, 86-87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).  It is common to require a defendant to exercise his rights under the Compulsory Process Clause in advance of trial, announcing his intent to present certain witnesses.  See Fed. Rules Crim. Proc. 12.1(a), (e), 16(b)(1) (C).  . . . There is no conceivable reason why he cannot similarly be compelled to exercise his Confrontation Clause rights before trial.  See *Hinojos-Mendoza v. People*, 169 P.3d 662, 670 (Colo. 2007) (discussing and approving Colorado's notice-and-demand provision).

*Melendez-Diaz*, 557 U.S. at 327.

The Court revisited its approval of the so-called "notice-and-demand procedures" adopting the theory that these procedures "typically render . . . otherwise hearsay forensic reports admissible[,] while specifically preserving a defendant's right to demand that the prosecution call the author/analyst of [the] report."  (citation omitted) *Bullcoming*, 131 S. Ct. at 2718 (citing *Melendez-Diaz*, 129 S. Ct. at 2541.  Thus, the Supreme Court has mandated that notice-and-demand procedures imposed by the States are sufficient to protect a defendant's rights where they "permit the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report."  *Melendez-Diaz*, 557 U.S. at 326.

Louisiana has and exercised this type of notice-and-demand procedure in Ducre's case, and he waived his right of confrontation by his silence.  Under Louisiana law, forensic laboratories are authorized to provide proof of examination and analysis of physical evidence by providing a certificate from the person conducting the examination or analysis which provides certain particulars related to the transfer of the evidence and the details and results of the examination and analysis. La. Rev. Stat. Ann. § 15:499.  When the State intends to introduce the laboratory certificate, the prosecutor must provide written notice of its intent to do so at least 45 days prior to trial.  La. Rev. Stat. Ann. § 15:501.  If the certificate and notice comply with the provisions of La. Rev. Stat. Ann. § 15:499 and §15:501, then the certificate is admissible and shall be received into evidence as considered prima facie proof of the facts contained therein.  La. Rev. Stat. Ann. § 15:500.

However, within 30 days of the filing of notice by the prosecutor, the defendant may file a written demand to have the person who conducted the examination and analysis appear to testify. La. Rev. Stat. Ann. § 15:501.  When this demand is made, the certificate is not deemed to be *prima facie* evidence and the analyst must testify to establish the test results.  *Id*.

These provisions constitute Louisiana's "notice and demand" procedure.  *See State v. Cunningham*, 903 So.2d 1110, 1120-21 (La. 2005).  In *Cunningham*, the Louisiana Supreme Court rejected the defendants' claim that his right of confrontation was denied where the laboratory analyst did not testify when the report was entered into evidence.  The Court held, in a manner similar to the analysis later utilized in *Melendez-Diaz* and *Bullcoming*, that Louisiana's notice-and-demand procedure did not infringe on the defendant's constitutional right to confrontation.  *Id.*, at 1121.  The Court went on to find that, to preserve his confrontation rights, the defendant need only make a

timely demand for testimony after the notice is filed.  *Id*.  This automatically renders the certificate of no independent evidentiary value and requires the State to call the analyst to prove its case.  *Id*.

Thus, under Louisiana law, if the prosecution complies with the notice-and-demand provisions, the laboratory certificate and report are admissible *prima facie* proof unless the defendant makes timely written demand for the analyst to testify.  Without doing so, the defendant waives his Sixth Amendment rights under the Confrontation Clause.  *Id*., at 1121; *State v. Simmons*, 78 So.3d 743 (La. 2012) (citing *Melendez-Diaz*).

Louisiana's scheme is exactly the kind of notice-and-demand procedure recognized by the United States Supreme Court to be protective, and not violative, of the Sixth Amendment's Confrontation Clause.  In Ducre's case, the State filed a Notice of Intention to Use the Certificate of Analysis on October 5, 2007, well before the trial held April 22, 2008.[50]  Attached to and referenced therin was the lab report that identified and weighed the marijuana seized from Ducre's car.[51]  Ducre did not file a demand for the laboratory technician to testify or seek a subpoena for his appearance.  The person who prepared the report, indicated on the report to be Sergeant Harry O'Neal, did not testify at trial.  Instead, the State had the laboratory report admitted "pursuant to our notice of intent to introduce the lab certificates," and Ducre's counsel had no objection.[52]

This was the only laboratory report admitted at trial for which the preparer did not testify at trial.[53]  Ducre therefore has failed to establish a violation of his right of confrontation.  The

---

[50]St. Rec. Vol. 1 of 8, Notice of Intention to Use Certificate of Analysis, 10/5/07.

[51]*Id*.; St. Rec. Vol. 1 of 8, Crime Lab Report (State's Exh. 6), 9/24/07.

[52]St. Rec. Vol. 3 of 8, Trial Transcript (continued), p. 396, 4/22/08.

[53]The Court notes that the record does not contain a report with regard to the marijuana seized from Ducre's pocket, and no such report was admitted into evidence.  In addition, the preparer of the supplemental lab report related to the latent fingerprint testing, Deputy Michael Futch, testified at trial in connection with his report.  St. Rec. Vol. 3 of

laboratory report and the prosecutor's notice complied with the mandates of Louisiana's notice-and-demand procedure. Ducre did not preserve his rights by demanding the presence of the preparer and therefore waived his Sixth Amendment rights. This is the same scenario recognized by the United States Supreme Court *Menendez-Diaz* and *Bullcoming* as an acceptable procedure for the protection of a defendants' right of confrontation.

For these reasons, the state courts' denial of relief was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Ducre is not entitled to relief on this issue.

## XII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Patrick Ducre's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[54]

New Orleans, Louisiana, this 21st day of October, 2013.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

8, Trial Transcript (continued), p. 406, 4/22/08; St. Rec. Vol. 1 of 8, Crime Lab Supplemental Report (State's Exh. 5), 9/19/07. Thus, the only report at issue is the laboratory report related to the marijuana seized from the car.

[54]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.